IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ELIJAH PAUL BOWMAN, )  | |
|    Plaintiff, ) | Civil Action No. 7:19cv00585 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ANGIE GAUTIER, et al., ) | By: Michael F. Urbanski |
|    Defendants. ) | Chief United States District Judge |

Elijah Paul Bowman, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to cruel and unusual living conditions. The defendants filed a motion for summary judgment and this matter is ripe for disposition.[1] After reviewing the record, the court will grant the defendants' motion for summary judgment.[2]

I.

Bowman alleges that on or about July 17, 2019, he and nine other inmates were transported from court to the New River Valley Regional Jail ("NRVRJ") by defendant Officer Gautier.[3] Upon arriving at the jail, Officer Gautier escorted the three female inmates from the van to the jail. Because it was "extremely humi[d] and very hot" and the air conditioning in the van was not working correctly, Bowman asked Officer Gautier to leave the van door open while she escorted the female inmates. Bowman states that Officer Gautier responded that, "it wouldn't be so hot if you all [weren't] so verbal with female [inmates] during the ride back from court," and slammed

---

[1] The defendants filed a motion to dismiss or in the alternative for summary judgment and attached declarations and exhibits. See ECF Nos. 13 and 14. Because the court considered Superintendent Winston's declaration in adjudicating the motion, the court will treat defendants' motion as one for summary judgment and has given appropriate notice. See Fed. R. Civ. P. 12(d).

[2] The court notes that in Bowman's response to defendants' motion for summary judgment (see ECF No. 17), he notes that he has not had the opportunity to review the DVD which is Exhibit B of defendant Bowman's declaration. According to defendant Bowman's declaration, the DVD depicts the sallyport video of the incident at issue. The court did not consider defendant Bowman's declaration or the DVD exhibit in adjudicating this case and, thus, concludes that Bowman was not prejudice by not reviewing the DVD before filing his response.

[3] In her affidavit, Officer Gautier indicates that transport took place on July 15, 2019; however, the two-day difference in the dates is not material to the court's adjudication of the defendants' motion.

the door closed.  Bowman and six other male inmates were left in the van with no fresh air and "heat steadily rising" for "30 to 35 min[utes]."  Bowman alleges that he was "losing consciousness," his blood pressure was 181/114, and he was "sweating and fighting for air."  Bowman states that as he was "feeling on the edge of passing out," the inmates began "rockin[g] the van from side to side to get some attention."  Bowman heard someone ask on the radio in the van, "[Are] there inmates in the van park[ed] in the sallyport?"  A minute or two later, Officer Gautier returned with another officer, "like she was in a rush," with water ready when they opened the van doors.  Bowman states that he had to be "helped" getting inside because he "couldn't make it on his own."  A nurse checked his blood pressure and it was 170/104.  Since that incident, Bowman alleges that he now has high blood pressure, needs glasses to read, has dizzy spells, and his memory "is not the same" as it used to be.

Defendants filed a motion for summary judgment, arguing that Bowman failed to exhaust administrative remedies before filing this action and that, nevertheless, Bowman failed to adequately allege involvement of defendants Superintendent Gregory P. Winston, Deputy Superintendent John S. Bowman, and Security Director Marty Shallard, and the defendants are entitled to qualified immunity.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary

judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See id. at 255; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### III.

Defendants argue that Bowman failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). For the reasons stated herein, the court will grant defendants' motion for summary judgment on this basis.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, Porter, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will

3

bar an inmate's § 1983 action. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see Langford v. Couch, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. Woodford, 548 U.S. at 90. But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

In support of the defendants' motion for summary judgment, defendant Superintendent Winston provides a declaration outlining the grievance process at NRVRJ. An inmate at the NRVRJ who wishes to submit a grievance must first submit an inmate request form stating his complaint and requesting a grievance form. A shift commander will then meet with the inmate and attempt to informally resolve the complaint. If that attempt is unsuccessful, the shift commander issues the inmate a grievance form. The NRVRJ then has a three-step formal grievance process. First, the inmate submits a grievance form detailing his complaint. An administrator responds to the grievance. If the inmate is not satisfied with the administrator's response, he may then appeal to the Deputy Superintendent. If the inmate is not satisfied with the

4

Deputy Superintendent's response, he may then appeal to the Superintendent. The Superintendent's response is final and completes the administrative remedies available to an inmate at NRVRJ.

Superintendent Winston avers that he maintains records of every inmate request and grievance made at NRVRJ, and that Bowman never submitted an inmate request to receive a grievance form regarding the allegations of this action and Bowman has never submitted a grievance regarding the allegations of this action. Accordingly, Bowman has not completed the grievance procedure at the NRVRJ. In response to this, Bowman states that he did not submit an inmate request form for a grievance because, on the date of the incident, a nurse told him that she would follow up with him in a few days and because another officer told him that he needed to fill out a § 1983 form, but did not "say anything about a request form." There is no evidence that Bowman was prevented in any way from pursuing administrative remedies.

The record reflects that Bowman did not complete the process for administrative review for his claims, and he has not established that administrative remedies were unavailable to him. Finding no genuine dispute of material fact, the court concludes that defendants are entitled to summary judgment as a matter of law because Bowman failed to exhaust available administrative remedies.

### IV.

For the reasons stated, the court will grant defendants' motion for summary judgment.

**ENTER**: This 21st day of July, 2020.

Mike Urbanski
cn=Mike Urbanski, o=US Courts,
ou=Western District of Virginia,
email=mikeu@vawd.uscourts.gov,
c=US
2020.07.21 16:16:12 -04'00'

Michael F. Urbanski
Chief United States District Judge